IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 20, 2007 Session

## STATE OF TENNESSEE v. LACHANTA MONIQUE TYLER

**Appeal from the Criminal Court for Davidson County**
**No. 2005-B-1095    Seth Norman, Judge**

---

**No. M2006-00878-CCA-R3-CD - Filed August 23, 2007**

---

The defendant, Lachanta Monique Tyler, was convicted by a Davidson County jury of aggravated assault, a Class C felony, and theft of property involving merchandise valued at $500 or less, a Class A misdemeanor. See T.C.A. §§ 39-13-102; 39-14-103; 39-14-105; 39-14-146. She was sentenced to three years for the aggravated assault conviction and eleven months and twenty-nine days for the theft conviction, with the sentences imposed concurrently and to be served on probation. The defendant appeals, claiming (1) that the evidence was insufficient to support her conviction of aggravated assault, (2) that the trial court erred in denying her motion for judgment of acquittal on aggravated assault, (3) that the trial court erred in failing to sever these offenses from two other offenses of which she was acquitted, (4) that the court erred by admitting prior bad act evidence of a prior shoplifting incident. Upon review, we affirm the defendant's theft conviction, modify the aggravated assault conviction to assault, and remand the case for imposition of judgment on the assault conviction including a sentence of eleven months and twenty-nine days to be served on probation and concurrently with the theft sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Modified in Part, Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. McLIN, JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Lachanta Monique Tyler.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was charged with two counts of theft of property and two counts of aggravated assault. The charges stemmed from allegations of two separate shoplifting incidents and chemical

spray attacks on security personnel at a TJ Maxx store on February 8, 2005, and at a Hecht's store on February 10, 2005. The defendant was acquitted of the TJ Maxx incidents but convicted of the Hecht's crimes.

William "Jamie" Harris testified that he was working as a loss prevention detective at the TJ Maxx store in Bellevue on February 8, 2005. He said that he observed the defendant and another woman enter the store and that he recognized the defendant as someone who had been in the store in the past. He said he saw the defendant and her companion taking sensor tags off merchandise, taking the merchandise off hangers, and concealing the merchandise inside a jacket and a black purse. He said the black purse was also TJ Maxx merchandise. He said he had Emily Inman, the store's assistant manager, assist him in watching the defendant and her companion. He said that he watched the defendant and her friend from a tower inside his office and that when he saw them walking toward the front of the store, he decided to apprehend them. He said that as he moved toward them, a third woman whom he recognized as having been in the store on prior occasions tried to stop him. He said that he walked past this woman and that the defendant's companion then began gesturing, talking loudly, and whistling. He said one of the defendant's friends who was at the service desk of the jewelry counter whistled at the defendant. He said the defendant was at the front door about to go outside, turned and saw him, and went back inside the store to the active wear department. He said he took a towel from a rack, went through the checkout line, and purchased the towel in an attempt to maintain his cover. He said that the woman who had been at the service desk came up to him and attempted to make conversation and that he tried to avoid her. He said the woman approached the defendant and handed her something and then came back. He said he went to the defendant, identified himself as a loss prevention detective, and showed her his identification badge. He said that the defendant attempted to hit him with her fist but that he was able to block her hand. He said he saw an object in her hand. He said that she sprayed him with "an unknown chemical agent" and that he was blinded. He said he pulled her outside to get her away from customers and restrained her in a hold he had used when he was employed with the sheriff's department. He said that one of the defendant's friends came out and said she was pregnant and that one of her friends began kicking him and pulling on his arm. He said one of her friends said, "[G]o get the gun out of the truck." He said that at this point, he released the defendant. He said one of the store managers was able to get the tag number of the Suburban in which the defendant left. He said the store's employees gathered up the items left behind and that an expensive pocketbook with an identification card bearing the defendant's name was among the items.

Mr. Harris testified that after the altercation, he started having chest pains and trouble breathing and became nauseous. He said that an ambulance came to attend to him and that these symptoms subsided in a couple of hours. He said that his eyes burned and that the pain was an eight or nine on a one-to-ten scale. He said that his eyes were sensitive to bright light, that he had to wear dark glasses like the type worn by people who have had cataract surgery, that he was prescribed antibiotics and eye drops for irritation and redness, that the pain and sensitivity to bright light lasted for three to six months, that his face was red for twenty-four to forty-eight hours, and that his eyes were red for six to eight months afterwards. He identified a photograph in which his eyes appeared red and testified that it was taken six to eight months after the incident. He said that at the time of

his testimony, which was just over a year after the incident, his eye still became irritated and dry, which he said previously had not been a problem. He said he previously had been sprayed with mace as part of law enforcement training. He said that no one died from the law enforcement exercise but that it might be fatal to a person with asthma.

Mr. Harris testified that he was able to match the photograph on the identification card with one of the women on the store's surveillance video. He said the woman who took merchandise and sprayed him was the defendant. He said he was familiar with the defendant because he had seen her at TJ Maxx on several occasions. He recalled that on December 31, he saw her come into the store with a friend and take a sensor tag off an Adidas duffle bag and then fill the bag with store merchandise after first taking off the sensor tags. He said that ultimately he did not apprehend the defendant and her friend that day and that "[t]hey ended up dropping the merchandise and walking out the door cussing me and telling me ha, ha, you didn't get me this time." He said that after the February 8 incident, he had not seen the defendant in TJ Maxx again.

Mr. Harris testified that TJ Maxx had surveillance cameras which he used on February 8. The surveillance footage was displayed for the jury, and the witness narrated the events depicted.

Emily Inman testified that she was working as an assistant manager at TJ Maxx on February 8, 2005. She said four women came into the store, at least two of whom she recognized "from past experiences." She said she recognized the defendant immediately. She said that she and Harris watched one of the women from the office. She witnessed Harris's encounter and altercation with the women. She recalled hearing one woman say, "[G]o get the gun, go get the gun." She said she saw the women flee in an SUV that was parked in a front spot, which was a typical location "when we have run-outs." She identified the defendant as the woman she saw concealing store merchandise.

Kathy Eggleston testified that she was working as an assistant manager at TJ Maxx on February 8, 2005. She said she was called to the scene of the altercation and found Harris with the defendant in a headlock. She said she made a note of the car tags. She heard someone mention getting a gun. She said she unloaded merchandise from the defendant's purse and jacket. She said that merchandise was stuffed into the arms of the jacket. She said she inventoried the items and determined that merchandise valued at $802.63 was recovered. She said that much of the merchandise was damaged by the chemical spray and that they had used towels that were for sale to help Harris clean up the chemical spray. When asked whether she had seen any of the individuals in the store before February 8, she said she had, and she identified the defendant as one of those individuals.

Officer George Spencer of the Metro Police Department testified that he responded to a call at Bellevue TJ Maxx. He said there had been a shoplifting incident and an altercation in which a victim had been assaulted in the face with pepper spray. He said he took possession of a purse and its contents, which he identified. He said he was given a vehicle tag number and vehicle description. He said that as part of his law enforcement training, he had been required to go into a trailer where

mace had been sprayed. He said it was painful. He said he was not required to take a direct hit in the face.

William Foster testified that he was the loss prevention manager at Hecht's at Rivergate and was on duty on February 10, 2005. He said he was watching surveillance monitors when he noticed the defendant and another woman in the cologne department on one of the monitors. He saw the defendant's companion pick up two bottles of J Lo cologne. He then observed the two women go to the juniors' department, take some clothing from a rack, and go into the dressing room. He said that he radioed Kay Martin to go into the dressing room to see what was happening, that he saw the defendant and her companion come out of the dressing room without the boxes of cologne, and that Martin radioed him that she found two empty J Lo cologne boxes in the dressing room. He said he saw the defendant and her friend hang up the clothing they had taken to the dressing room and walk out of the store. He said that he went outside and confronted them and that Kay Martin arrived shortly thereafter. He said that he and Martin identified themselves as Hecht's loss prevention employees and that he requested that the defendant's companion come back inside to discuss the J Lo cologne she had taken into the dressing room. He said the defendant's companion denied knowing what he was talking about and refused to go back to the store. He said he could see one of the cologne bottles protruding from the woman's blouse. He said the defendant grabbed her companion's handbag and went toward the car. He said that the defendant's companion became combative with Martin and him and that they tried to handcuff the woman. He said the defendant came up and said she would spray him and Martin if they did not release her cousin. He said the defendant also used profanity and grabbed Martin by her hair. He said he saw a spray canister and was able to duck as the defendant sprayed him. He said he knocked the canister out of her hand and grabbed it when it fell on the pavement. He said that there was a store employee in the parking lot who dialed 9-1-1 and that mall security and the Goodlettsville police responded. He said the defendant was involved in the struggle and that they were not able to subdue the defendant and her companion until mall security assisted them. He said the defendant was irate toward one of the mall security officers and made statements that she was going to file a lawsuit. He said the defendant never said anything about not realizing that her companion had stolen something or that Foster was a security employee.

With respect to the chemical spraying he received, Foster testified that he was able to duck down and shield himself. He said the spray hit the front, back, and side of his face. He said some of it got into his eyes. He said that he had to wash his eyes out but that he did not miss work or have to go to the hospital. He said he did not have any permanent injuries as a result of being sprayed.

The state played the video surveillance tapes for the jury. Foster narrated the relevant events depicting the defendant and her companion inside the store. The tapes did not contain evidence of the encounter outside the store.

Kay Martin testified that she was working as a loss prevention employee at Hecht's at Rivergate Mall on February 10, 2005. She said that she followed the defendant and her companion into the dressing room. She said the women were in rooms across from each other. She said that

-4-

she could hear their conversation about the clothing they had taken in the rooms with them and that the conversation was not relevant to the perfume. She said that after the women left the dressing room, she went into the room where the defendant's companion had been and that she found two empty J Lo cologne boxes. She said she informed Foster of this by radio. She said she went outside the store and saw Foster talking to the defendant's companion. She said Foster identified himself as a loss prevention employee and told the woman she needed to come back inside to discuss the two bottles of cologne. She said that the defendant and her companion were using profanity and refusing to comply. She said that she dropped her radio and that the defendant kicked it away. She said that she and Foster struggled with the defendant's companion to try to get her subdued and that the defendant walked up and took her companion's purse. She said she continued to struggle with the defendant's companion and that she suddenly felt pain from the defendant pulling her by the back of the head off the defendant's companion. She said the defendant said, "I am going to spray you, b----." She said she was very fearful of being sprayed because she had asthma. She said that she turned her head and that the defendant sprayed the back of her hair. She identified the defendant as the person who had sprayed her. She said another Hecht's employee who was in the parking lot called for help. She said mall security personnel helped subdue the defendant and her companion.

Officer Tim Preston of the Goodlettsville Police Department testified that he was called to Rivergate Mall on February 10, 2005. He said that when he arrived, he found Foster and Martin with two shoplifting suspects. He said the suspects were taken to Metro Nashville for booking. He said he learned that there were "open" warrants for the defendant. He said that he generally left it up to security personnel what charges, if any, to file against shoplifters and that Foster did not take out a theft warrant against the defendant.

The defendant testified on her own behalf. She testified that she had never been to TJ Maxx at Bellvue and that she had never seen Harris other than in court. She said she had been in a nightclub on January 9, 2005, and that her coat and its contents, including her identification, had been taken. She offered a police report to corroborate her testimony. She identified a duplicate state identification card issued on January 10, 2005. She said she never recovered the identification card taken on January 9.

The defendant said she was at the mall on February 10, 2005. She said she had been shopping with money from her income tax refund. She said she went to Hecht's to purchase cologne. She said she was shopping with her cousin, Angel Crump. She said her cousin showed her some J Lo and Beyonce perfume. She said she went to the men's cologne section and purchased Armani cologne. She said that she and her cousin went separate ways for a time. She said she went to the juniors' department, selected some clothes, and went into the dressing room. She said her cousin was already in the dressing room when she arrived. She said that they were in separate stalls and that she could not see her cousin because she was behind a closed door. She said that she tried on some clothes and that she assumed her cousin was doing the same. She said that they left the dressing room, that she put the clothes back on the rack, and that they left the store. She said she walked toward her car with her cousin a few steps behind her. She said she put a bag of cologne in the car and was getting inside the car when she heard a man talking to her cousin. She said she could

not hear what was being said. She said the man grabbed her cousin's arm and tried to force it behind her back. She said she did not hear the man announce his identity as a security officer. She said she could hear her cousin yelling for the man to leave her alone. She said the man told her cousin that she needed to come back into the store, that her cousin refused, and that they were fighting. She said a woman came outside and assisted Foster and that the two of them "done slammed her on the ground, and he had his knee in her back." She said her cousin pleaded for the defendant to help her and for the man to get off her because she was pregnant. The defendant said she picked up her cousin's purse and took mace from inside it. She said she told the man and woman to get off her cousin or she would spray them. She said that the man still had his knee in her cousin's back, that her cousin was still screaming, and that she sprayed the mace. She said the mace hit the man's back. She said the man knocked the mace out of her hand, picked it up, and sprayed it at her. She said that her cousin continued to struggle and that she heard glass break. She said she could see glass come out of her cousin's shirt. She said one of the mall security officers grabbed her and that she resisted and told him she was not doing anything. She said she was later advised by a Goodlettsville police officer that there were two warrants for her arrest.

The defendant said she sprayed mace because she was scared. She said she did not know the man and woman who were struggling with her cousin. She said she did not hear them announce that they were security personnel.

The defendant acknowledged on cross-examination that her hair was a different color than it was on February 10 and that she had changed her hairstyle on the weekend before the trial. She admitted knowing that Angel Crump had been arrested for shoplifting in the past.

Angel Crump testified that the defendant was her cousin. She said that on February 10, she and the defendant were shopping at Hecht's and that she stole some perfume by concealing it inside her shirt when she was in the dressing room. She said the defendant was not in the dressing room when she did this but was elsewhere in the store purchasing some cologne. Crump testified that she had served an eighty-one-day jail sentence for the crime. She said that as they were approaching their car outside the store that day, a man approached her and told her she needed to come back inside. She said that he told her he needed to discuss the perfume with her and that she denied having stolen it. She said he did not identify himself as a store employee, but she acknowledged that she "kind of" knew who he was. She said she tried to walk away but the man grabbed her. She said that she was wrestled to the ground and that the perfume broke. She said she asked the defendant to help her. She said the defendant took mace from Crump's purse and tried to spray the store employees. Crump said she did not think mace hit either of the employees and that she thought the female employee knocked the mace out of the defendant's hand. Crump admitted she had six theft convictions.

After receiving this evidence, the jury acquitted the defendant of the TJ Maxx charges. However, it found her guilty of the Hecht's charges. After receiving an effective three-year sentence on probation, the defendant filed this appeal.

# I

The defendant has related issues regarding the sufficiency of the evidence and the trial court's denial of the motion for judgment of acquittal on the aggravated assault conviction. Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appellate review of a denial of a motion for judgment of acquittal, we apply the same standard as a question of the sufficiency of the convicting evidence. See, e.g., State v. Brewer, 945 S.W.2d 803, 805 n.2 (Tenn. Crim. App. 1997).

The aggravated assault charged in the indictment is that the defendant intentionally or knowingly caused bodily injury with the use or display of a deadly weapon. T.C.A. § 39-13-101(a)(1), -102(a)(1)(B). A "deadly weapon" is "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury" or "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury[.]" Id. § 39-11-106(5)(A), (B). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" Id. § 39-11-106(a)(2). "'Serious bodily injury' means bodily injury that involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, order or mental faculty[.]" Id. § 39-11-106(a)(34).

The question in this case is whether the chemical spray that the defendant sprayed at William Foster was a deadly weapon. Our supreme court has recognized that there are two categories of deadly weapons, those which are deadly per se, tracking subsection (A) of Code section 39-11-106(5), and those which are deadly because of the way in which they are used, tracking subsection (B). State v. Thomas Martin McGouey, ___ S.W.3d ___, No. E2005-00642-SC-R11-CD (Tenn., June 29, 2007) (relying on Morgan v. State, 415 S.W.2d 879 (Tenn. 1967)). A firearm is an example of a deadly weapon per se. Morgan; 415 S.W.2d at 882; State v. Haynes, 720 S.W.2d 76, 81 (Tenn. Crim. App. 1986). "If an item is not a deadly weapon per se, it will only be considered a deadly weapon under subsection B if the defendant in a particular case actually used or intended to use the item to cause death or serious bodily injury." See McGouey, ___ S.W.3d at ___ (citing State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000)) (emphasis in McGouey).

Thus, in determining whether the chemical spray used by the defendant was a deadly weapon in the assault against Foster, our inquiry must focus on whether the defendant used or intended to use the chemical spray to cause death or serious bodily injury. First, we note the record does not resolve the question of the identity of the chemical spray. The indictment charges the defendant with using "pepper spray" in both the TJ Maxx and Hecht's incidents. There was trial evidence that the

-7-

substance may have been mace, rather than pepper spray. There was testimony about the effects of mace during law enforcement training, but there was no corresponding evidence about the effects of pepper spray. William Harris, the loss prevention officer at TJ Maxx, testified about the pain from exposure to mace in his law enforcement training and from a chemical spray when he was attacked by an alleged shoplifter on February 8, 2005. There was testimony about the effects of the spray actually used on both victims. There was evidence that Harris's injuries were painful, protracted, and significant. The evidence of Foster's injuries was less compelling. In the light most favorable to the state, the defendant sprayed Foster to assist in Crump's and her flight from a shoplifting crime. The defendant sprayed Foster on his head. Foster anticipated the assault and turned his head in order that the spray hit the side and back of his head, rather than his face. He did not have any permanent injuries and did not require any medical treatment.

The state urges us to consider the evidence of Harris's injuries in determining the sufficiency of the evidence of the conviction relative to Foster. However, there is no evidence that the substance the defendant sprayed on Foster was the same substance with which Harris's assailant sprayed him. The jury rejected the state's proof that the defendant was the person who sprayed Harris, and given that rejection, we are not inclined to hold that the evidence supports an inference that the assailant in both cases was the defendant and that she used the same chemical spray in both incidents.

Given these uncertainties, we cannot say that evidence beyond a reasonable doubt exists that the defendant either caused or intended to cause death or serious bodily injury to Foster, as opposed to a lesser assault sufficient to allow the defendant and Ms. Crump a successful escape from the store security officers. We conclude that the evidence is insufficient to support the aggravated assault conviction and that the trial court erred in denying the motion for judgment of acquittal.

We hold that the evidence was sufficient to support a conviction of the lesser offense of assault. The defendant sprayed Foster with chemical spray, causing him bodily injury. Foster testified that some of the spray got into his eyes and that he had to wash them out with water. We therefore modify the defendant's conviction of aggravated assault to one of Class A misdemeanor assault.

## II

We consider next whether the trial court erred in denying her motion to sever the TJ Maxx offenses from the Hecht's offenses. The defendant claims the trial court erroneously relied upon the issue of identity in denying her motion.

Separate offenses may be permissively joined if they are part of a common scheme or plan or are of the same or similar character. Tenn. R. Crim. P. 8(b). If, however, they are not part of a common scheme or plan or if the evidence of one is not admissible at the trial of the other, the defendant has a right to a severance of offenses. Tenn. R. Crim. P. 14(b)(1). A severance of such offenses shall be granted (1) before trial if it is deemed appropriate to promote a fair determination of the defendant's guilt or lack thereof or (2) during trial if it is deemed necessary to achieve such

a fair determination. Tenn. R. Crim. P. 14(b)(2)(A), (B). The issue includes consideration of the number of offenses, the complexity of the evidence, and the difficulty with which the jury would be able to distinguish the evidence and apply the law as to each offense. Whether or not to grant a severance rests within the sound discretion of the trial court. State v. Wiseman, 643 S.W.2d 354 (Tenn. Crim. App. 1982).

Our supreme court has recognized three categories of common scheme or plan evidence: "(1) offenses that reveal a distinctive design or are so similar as to constitute 'signature' crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction." State v. Moore, 6 S.W.3d 235, 240 (Tenn. 1999). In the present case, there was no evidence of a continuing plan or conspiracy or that all of the offenses were part of the same criminal transaction. Thus, we consider only whether the offenses were distinctive signature crimes. Evidence of signature crimes is admissible under limited circumstances. Such evidence is typically offered to prove a defendant's identity. See id. at 239. In the present case, the state sought to prove the defendant's identity as the perpetrator of both the TJ Maxx crimes and the Hecht's crimes based upon the distinctive nature of the offenses.

For the offenses to reveal a distinct design, the "modus operandi employed must be so unique and distinctive as to be like a signature." Id. at 240 (quoting State v. Carter, 714 S.W.2d 241, 245 (Tenn. Crim. App. 1986)). Although the offenses do not have to be identical in every respect, a common scheme or plan is not found merely because there was evidence that the defendant committed the multiple offenses or because the similarities of the offenses outweigh the differences. Id. at 240-41. "Rather, the trial court must find that a distinct design or unique method was used in committing the offenses." Id. at 241. The method of perpetrating the crimes must employ "'such unusual particularities'" that a reasonable person could believe it unlikely that different people were using this method. Id. at 240 (quoting Harris v. State, 189 Tenn. 635, 644, 227 S.W.2d 8, 11 (1950)).

The danger in not severing offenses is that the jury will improperly find a defendant guilty of a crime by inferring his propensity to commit the crime from the evidence of the other crimes. Id. at 242. Thus, the question is primarily one of evidentiary concern. Id.; see Tenn. R. Evid. 404(b).

In the present case, we cannot say that the similarity of spraying store personnel with chemical spray is so unique as to constitute a signature crime that is unlikely to be replicated by someone other than a single perpetrator. This tactic to prevent a shoplifting defendant's confrontation with store security personnel is not unique. See, e.g., United States v. Pardue, 765 F. Supp. 513, 515 (W.D. Ark. 1991) (defendant in murder-for-hire case had history of shoplifting and spraying security officer with mace in order to facilitate escape), rev'd on other grounds, 983 F.2d 835 (8th Cir. 1993); People v. Gina Hinton, No. A114057, San Mateo County (Cal. Dist. Ct. App., June 19, 2007) (shoplifting defendant sprayed mace when confronted by security guard as defendant attempted to leave store with stolen merchandise); Schaeffer v. State, 779 So. 2d 485 (Fla. Dist. Ct. App. 2000) (defendant, who was part of a three-person shoplifting group that went into a department store, "maced" security guard during confrontation in parking lot over stolen merchandise); Albert

<u>Judie v. State</u>, No. 04-95-00322-CR, Dallas County (Tex. Ct. App., Dec. 27, 1995) (in revocation proceeding, evidence that probationer sprayed store investigator with mace when confronted outside the store about stolen merchandise); <u>State v. Paul P.</u>, No. 44457-3-I, King County (Wash. Ct. App., Apr. 22, 2002) (defendant's companion unsuccessfully attempted to spray security guard with mace or pepper spray when defendant was confronted in store parking lot over stolen merchandise). We note, as well, that with respect to the Hecht's crimes of which the defendant was convicted, the defendant's identity was not at issue because she was apprehended on the scene. Thus, we conclude that the trial court should have granted the defendant's motion for severance.

It does not follow, however, that reversal is required. We cannot conclude that the defendant was prejudiced by the error. The jury rejected the evidence that the defendant was involved in a similar shoplifting and assault incident at TJ Maxx two days before the conviction crimes took place, meaning the jury did not improperly infer her guilt of the Hecht's offenses from the TJ Maxx allegations. We conclude that the error was harmless. <u>See</u> <u>Moore</u>, 6 S.W.3d at 242-43 (holding that denial of severance was harmless when defendant was convicted of some charges and acquitted of others).

## III

Finally, the defendant contends that the trial court violated Tennessee Rule of Evidence 404(b) by admitting evidence of other crimes, wrongs, or acts of the defendant. She argues that the trial court should have excluded the evidence about the defendant having been in TJ Maxx before February 8, 2005, on one occasion removing security tags from merchandise in an apparent effort to steal the items. The defendant acknowledges that the evidence had some bearing on the issue of identity and challenges the admissibility of the evidence only to the extent that it implicated her in a theft.

Tennessee Rule of Evidence 404(b) prohibits the introduction of evidence of other crimes or acts, except when the evidence of other acts is relevant to a litigated issue, such as identity, intent, or motive, and its probative value is not outweighed by the danger of unfair prejudice. The rule states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for some other purpose. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state

on the record the material issue, the ruling and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). We review a trial court's ruling on evidentiary matters under Rule 404(b) for abuse of discretion, provided the trial court has substantially complied with the procedural prerequisites of the rule. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). If the court did not substantially comply with the procedure, its decision is not entitled to deference by the appellate court. See id. at 653.

The issue arose when the state moved the court for permission to elicit evidence from William Harris about the defendant's having been at TJ Maxx a few weeks before February 8 with a group of women. The state sought to have Harris testify that he saw the women, including the defendant, removing security sensor tags from merchandise but that they left the store without taking the merchandise and laughed and made a comment about Harris not catching them stealing. The state sought to introduce this evidence to establish the defendant's identity and to explain why Harris conducted surveillance of the defendant when she came to the store on February 8. When the trial court conducted a pretrial hearing on the matter, the defense stated that it did not object to admission of evidence that TJ Maxx personnel claimed to have seen her in the store before February 8 but did object to the evidence that the defendant had been involved in shoplifting activity before February 8. The trial court ruled that Harris could testify about having seen the defendant in the store and removing sensors from the merchandise, provided Harris's testimony was that he actually observed the defendant removing sensors. Harris ultimately testified in detail about the earlier occasion on which he claimed to have seen the defendant among a group of women that took sensor tags from merchandise, concealed the merchandise in a duffel bag, dropped the merchandise before leaving the store, and cursed at him and said "ha, ha, you didn't get me this time." In her motion for new trial, the defendant raised a general allegation that the trial court "erred in allowing the State to present improper 404(b) material," and she did not elaborate on the nature of the alleged error at the hearing on the motion for new trial.

The defendant argues on appeal that the trial court failed to make one of the necessary findings which is a prerequisite to admission of evidence under Rule 404(b). She claims that the trial court did not find that the state had proven by clear and convincing evidence that the prior incident occurred. She also argues that any probative value of the evidence was outweighed by its prejudice. The state counters that the trial judge substantially complied with the rule. It acknowledges that although the judge never made an explicit "clear and convincing" finding, the defendant has waived any complaint by her failure to object to the lack of specificity of the court's ruling relative to clear and convincing evidence of the fact at the time the ruling was made. The state argues, as well, that the record does not reflect prejudice to the defendant from admission of the evidence, particularly in light of her acquittal on the TJ Maxx charges.

-11-

The defendant is correct that the trial court failed to make a finding by clear and convincing evidence that the prior incident occurred. The state is correct, as well, that the defendant did not object. We note that the defendant did not contend that the evidence should be excluded altogether. Despite the fact that she testified at trial that she had never been to TJ Maxx at Bellevue, she did not object to admission of evidence that TJ Maxx personnel claimed to have seen her in the store before February 8. She objected only to the evidence that she had been involved in shoplifting activity before February 8.

The trial court should have made an explicit finding as required by Rule 404(b), although it may have overlooked the necessity of this finding due to the defendant's challenging only the admissibility and not the substance of the testimony. In any event, the defendant has not demonstrated that she was prejudiced by the trial court's omission. The defendant was acquitted of the TJ Maxx charges, and her identity was not in question with respect to the Hecht's charges. The jury's verdict reflects that it was able to consider the evidence properly. There is no indication that the jury discounted the 404(b) evidence in acquitting the defendant on the TJ Maxx charges but accredited it in finding her guilty of the Hecht's charges. Indeed, such a conclusion is not logical.

In consideration of the foregoing and the record as a whole, the judgment of the trial court on the theft conviction is affirmed. The aggravated assault conviction is modified to reflect a conviction of Class A misdemeanor assault and a sentence of eleven months and twenty-nine days to be served on probation and concurrently with the theft sentence. The case is remanded for entry of a corrected judgment.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE